**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BERNARDINO EDUARDO MEJIA-
HERNANDEZ,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-74277
Agency No.
A070-957-121

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 3, 2010—Pasadena, California

Filed January 27, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Goodwin
Partial Concurrence and Partial Dissent by Judge Zouhary

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## COUNSEL

Andrew Knapp and Claire Cifuentes, Cifuentes Knapp & Associates, Los Angeles, California, for the petitioner.

Glen T. Jager, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for respondent.

Mary Kenney, American Immigration Council, Washington, D.C., for the amicus.

## OPINION

GOODWIN, Circuit Judge:

In view of a number of pending immigration cases calling into question the continued vitality of *Ekimian v. INS,* 303 F.3d 1153 (9th Cir. 2002), we must decide whether we can review a BIA decision against reopening in the context of a claim of equitable tolling. We affirm the BIA decision regarding notice. We do not review the sua sponte reopening. We reverse the BIA decision on equitable tolling, and remand to the agency for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Bernardino Eduardo Mejia-Hernandez, a citizen of Guatemala, petitions for review of a Board of Immigration Appeals ("BIA") decision vacating an Immigration Judge's ("IJ") suspension of deportation and reinstating an order of deportation. The BIA found that Mejia received effective notice of his original merits hearing, was not entitled to the *sua sponte* reopening granted by the IJ, and was not entitled to equitable tolling of the deadline for a motion to reopen under the Nicaraguan Adjustment and Central American Relief Act (NACARA) § 203(c). Pub.L. No. 105-100, 111 Stat. 2160 (1997), amended by Pub.L. No. 105-139, 111 Stat. 2644 (1997).

Petitioner entered the United States on February 20, 1993. On November 17, 1993, he applied for asylum. An asylum officer found that guerillas had beaten Mejia to the point of near death, but that he had not been harmed on account of any protected grounds. The officer referred Mejia to an IJ, and the

Immigration and Naturalization Service ("INS") served Mejia with an Order to Show Cause for entering the U.S. without inspection. Mejia proceeded pro se and presented himself at several hearing dates through 1996. On one occasion, hearings were rescheduled for insufficient time and on another the IJ failed to appear. At the last of these appearances, Mejia submitted a proper change of address form, and notice of a rescheduled hearing was subsequently sent to his new address by certified mail. After two delivery attempts, the package remained unclaimed, and on January 7, 1997, an IJ ordered Mejia deported in absentia.

On March 31, 1998, Mejia, along with Marta Odelia Perez Lopez, the mother of his two U.S.-born children, consulted Bryan Ramos of the Centro de Assistencia Social Guatamalteco. Ramos falsely represented himself as an attorney licensed to practice immigration law. On behalf of both Mejia and Lopez, Ramos filed for relief under NACARA § 203(c). Ramos told Mejia he would be eligible for residency through his wife, despite the fact that Mejia and Lopez were not yet legally married. On April 13, 1998, Mejia was informed by the government that his motion had been rejected due to the failure to include a $110 filing fee. Mejia met with Ramos, who assured him that the INS was incorrect in requiring the filing fee, and that Ramos would correct the problem. Ramos never refiled.

On November 15, 1998, Mejia and Lopez married. For almost seven years Mejia and Lopez paid Ramos to handle their cases. Ramos continued to assure them that their cases were being handled properly. When Lopez was granted an appointment concerning her NACARA claim, however, Ramos refused to attend with her. Ramos's secretary then admitted to Lopez that Ramos was not a licensed attorney. On January 7, 2005, Lopez was granted relief under NACARA. Mejia, concerned that his case was not being handled properly, consulted his present attorney for the first time on April 30, 2005.

On July 5, 2005, Mejia filed a motion to reopen to rescind the order of deportation entered in absentia, renewed his motion to reopen under NACARA, and raised the issue of equitable tolling. On August 11, 2005, an IJ reopened the proceedings sua sponte for the following stated reasons: (1) Mejia's original asylum claim was timely filed but never adjudicated; (2) Mejia, with his wife, had two U.S.-born children; (3) Mejia's wife had been granted lawful permanent resident status through NACARA; and (4) the family would suffer hardship if Mejia's claims were not favorably adjudicated. The IJ further noted that such a decision was within the spirit and intent of NACARA.

At Mejia's February 8, 2006 merits hearing, an Immigration and Customs Enforcement (ICE) Assistant Chief Counsel stated that Mejia was statutorily eligible for NACARA relief and had established the requisite hardship. On appeal, however, ICE opposed, as an abuse of discretion, the IJ's sua sponte reopening, as the sole issue on appeal to the BIA. Mejia then raised the issue of proper notice for his 1997 hearing. The BIA overturned the IJ's sua sponte reopening, rejected Mejia's notice and equitable tolling arguments, and reinstated the deportation order. Mejia timely appealed to this court.

## II.   STANDARDS OF REVIEW

The BIA reviewed de novo the IJ's finding concerning equitable tolling of the NACARA deadline. We review the BIA's decision de novo, except to the extent that agency interpretations are afforded deference. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006). The BIA's decision reviewed here is unpublished and issued by a single member of the BIA; it does not carry the force of law, and it is accorded only *Skidmore* deference proportional to its thoroughness, reasoning, consistency, and ability to persuade. *Id.* at 1012-15 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

## III.   DISCUSSION

### A.   Mejia received proper notice of his 1997 hearing and is not entitled to a reopening of that hearing.

Mejia argues that, although he had constructive notice of his 1997 hearing, he never received actual notice, and should therefore be allowed to reopen. The BIA correctly rejected this argument, based on the twice-unclaimed notice of hearing sent by certified mail to Mejia's proper address.

**[1]** An alien ordered removed in absentia has a statutory right to seek to reopen his case and petition for relief. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii). But the BIA has held that certified mail bearing notice of the original removal hearing sent to an alien's last known address provides sufficient notice to effect service, whether or not the letter was signed for by the alien or by a responsible person at his address. *In re Grijalva*, 21 I. & N. Dec. 27, 34 (BIA 1995). *Grijalva* held that "where service of a notice of deportation[1] proceeding is sent by certified mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." *Id.* at *37. This court has held "that notice by certified mail sent to an alien's last known address can be sufficient under the [Immigration and Nationality] Act, even if no one signed for it." *Arrieta v. I.N.S.*, 117 F.3d 429, 431 (9th Cir. 1997).

This strong presumption of effective notice by certified mail contrasts with a weaker presumption that results from regular mail service. *Salta v. I.N.S.*, 314 F.3d 1076, 1079 (9th Cir. 2002). "Where a petitioner actually initiates a proceeding

---

[1]The change of terms from "deportation" to "removal," affected by legislative amendment, is inconsequential as the new and old statutes on this point are otherwise identical. *Compare* the older 8 U.S.C. § 1252b(c)(3)(B) with the newer 8 U.S.C. § 1229a(b)(5)(C)(ii).

to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a sworn affidavit from petitioner that neither [he] nor a responsible party residing at [his] address received the notice should ordinarily be sufficient to rebut the presumption of [regular mail] delivery." *Id.*

**[2]** Mejia initiated his proceedings to receive a benefit, appeared at earlier hearings, had no known motive to avoid his 1997 hearing, and, together with his wife, the only other adult resident at his address, signed a sworn affidavit that he did not receive notice. Mejia meets the *Salta* test for overcoming the weak presumption of constructive notice by regular mail. But Mejia has presented no additional evidence to overcome the stronger presumption created by the use of certified mail in his case. The Department of Homeland Security (DHS) has put into evidence the certified mail envelope and certificates showing two attempted but unclaimed deliveries at the correct address, which Mejia's evidence cannot effectively rebut. Therefore, we hold that Mejia received effective notice of his 1997 hearing and is not entitled to a reopening of that hearing under 8 U.S.C. § 1229a(b)(5)(C)(ii).

### B. This court cannot review the BIA's decision to overturn the IJ's sua sponte reopening.

Next, Mejia would have us review the BIA decision to overturn the IJ's sua sponte reopening of his case. The government contends that precedent prevents such review. *See Ekimian*, 303 F.3d at 1159. Mejia and *amicus curiae*, The American Immigration Council, counter that a recent Supreme Court ruling effectively overturns that precedent. *See Kucana v. Holder*, 130 S.Ct. 827 (2010). "This court has jurisdiction to determine whether jurisdiction exists." *Morales v. Gonzales*, 478 F.3d 972, 977 (9th Cir. 2007) (internal quotation marks omitted). We agree with the government's position.

**[3]** The *Kucana* Court found that a motion to reopen was reviewable. *Kucana*, 130 S.Ct. at 840. "[T]he presumption

favoring judicial review of administrative action" means that "executive determinations generally are subject to judicial review." *Id.* at 839. Precluding review requires clear and convincing evidence that Congress intended to dislodge this presumption. *Id.* The Court looks for such evidence in statutory language that reveals Congress's intent to preclude review. *Id.* at 838, 840. An agency's regulatory language with nothing more cannot bar a petitioner's access to the federal courts. *Id.*

The Court noted explicit statutory references employed by Congress to make certain agency decisions unreviewable. *Id.* at 831-32 (citing 8 U.S.C. § 1252(a)(2)(B)). None of these statutory reservations of authority, however, exempted from federal court review a BIA denial of a motion to reopen a removal proceeding. *Kucana*, 130 S.Ct. at 840; 8 C.F.R. § 1003.2(a).

The overall thrust of *Kucana* suggests that sua sponte reopening should be subject to review. There is a longstanding tradition of judicial review of reopenings in immigration cases; there is no statute suggesting review is not available; there is a presumption favoring review; and there is a separation-of-powers concern against giving the Executive authority to withhold cases from judicial review. *See id.* at 831. Were this an issue of first impression, a right to review might be recognized.

**[4]** Prior to *Kucana*, however, this court and nine other circuits found a decision not to reopen sua sponte to be one that was committed to agency discretion by law and, therefore, unreviewable. *See Ekimian*, 303 F.3d at 1159; *Tamenut v. Mukasey*, 521 F.3d 1000, 1003-04 (8th Cir. 2008) (en banc) (summarizing other circuit precedents); 5 U.S.C. § 701(a)(2). Unlike *Kucana*, the *Ekimian* court was not looking for statutory or regulatory language affirmatively putting a BIA decision outside of judicial purview. Instead, this court could not find a "sufficiently meaningful standard against which to judge the BIA's decision not to reopen" sua sponte. *Ekimian*,

303 F.3d at 1159. *Ekimian* relies on the narrow *Heckler* decision and its interpretation of § 701(a)(2) of the Administrative Procedures Act ("APA"). *Id.* at 1157, 1158 (citing *Heckler v. Chaney*, 470 U.S. 821 (1985) and 5 U.S.C. § 701(a)(2)).**[2]** The *Kucana* Court expressed no opinion on whether federal courts may review a BIA decision to deny reopening sua sponte, where unreviewability is grounded in an APA § 701(a)(2) rationale. *Kucana*, 130 S.Ct. at 839, n.18.

**[5]** Sua sponte reopening turns, according to the BIA, on whether a petitioner has demonstrated "exceptional circumstances" to justify the action. *Matter of J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997). The *Ekimian* court could not find a meaningful standard by which to judge satisfaction of the "exceptional circumstances" test. *Ekimian*, 303 F.3d at 1159. No significant changes have occurred since *Ekimian* that would allow this panel to find a sufficiently meaningful standard, and allow us to review sua sponte reopening.

### C. Mejia reasonably relied on the advice of his fraudulent "attorney," thereby equitably tolling the deadline for his motion to reopen under NACARA.

The IJ found, and on de novo review the BIA affirmed, that Mejia's NACARA motion to reopen was legally insufficient, as Mejia married his wife two months later than the NACARA September 11, 1998 deadline for filing. *See* 8 C.F.R. § 1003.43(e)(1). But the IJ and BIA have incorrectly assessed whether that deadline was equitably tolled. *See Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1097 (9th Cir. 2005) (finding that a NACARA § 203(c) deadline is subject to equitable tolling).

---

**[2]**Section 701(a) of the APA, which governs reviewability of administrative actions, reads: "This chapter applies, according to the provisions thereof, except to the extent that— (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

**[6]** This court "recognizes equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Iturribarria v. I.N.S.*, 321 F.3d 889, 897 (9th Cir. 2003).

**[7]** When the issue is fraudulent representation, "the limitations period is tolled until the petitioner definitively learns of counsel's fraud." *Singh v. Gonzales*, 491 F.3d 1090, 1096 (9th Cir. 2007) (internal quotation marks omitted). In *Singh*, the petitioner did not definitively learn of the fraud perpetrated against him when he merely had become suspicious of his lawyer's fraud and family members told him he should get another lawyer. *Id.*

Equitable tolling is "applied in situations where, despite all due diligence, the party requesting equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Albillo-De Leon*, 410 F.3d at 1099-1100 (brackets and internal quotation marks omitted). Albillo-De Leon had good reason to suspect his "attorney" was perpetrating fraud. *Id.* at 1094. He later learned that the court had no record of a motion alleged to have been filed on his behalf. He filed a Freedom of Information Act ("FOIA") request, and, more than six months after his earlier suspicions, upon receiving the FOIA response, learned his "attorney" was unlicensed and no motion had been filed on his behalf. *Id.* This court held that Albillo-De Leon acted with due diligence and did not definitively learn that he was being defrauded until the FOIA results were received. *Id.* at 1100. The NACARA deadline in question was equitably tolled throughout this period. *Id.*

Mejia hired someone who falsely represented himself as a licensed attorney. Ramos was hired on March 31, 1998, to file a motion to reopen under NACARA § 203(c). Mejia was subsequently informed by the Immigration Court that his motion to reopen, prepared and filed by Ramos, was rejected due to

the absence of a filing fee. Ramos assured Mejia that this was a mistake by the court, that he would properly address.

Mejia went years seeking and receiving assurances, and continuing to pay Ramos. The BIA viewed Mejia's continued reliance on Ramos as a failure in raising his claim of ineffective assistance of counsel, a failure of due diligence, and therefore, found no equitable tolling of the deadline. But additional facts suggest otherwise.

**[8]** Mejia first learned that Ramos was not an attorney through Ramos's secretary, when Ramos refused to accompany Mejia's wife to her long-awaited NACARA appointment. The DHS granted Mejia's wife relief under NACARA on January 7, 2005. Mejia's derivative motion to reopen under NACARA was dependent on the success of his wife being granted relief. It was not unreasonable for Mejia's wife to have relied for so long on Ramos's assistance; her NACARA claim took almost seven years to process but ultimately succeeded. Likewise it was not unreasonable that Mejia, whose claim was derivative to his wife's, would rely similarly on Ramos and expect no action from DHS on his derivative claim until sometime after his wife's claim was settled. Mejia would not have had his claim settled until 2005 even if he had not been fraudulently represented. The long period of waiting by Mejia did not show a lack of due diligence, as proved by his wife's successful result.

Other than the long, but ultimately reasonable, length of time, the only apparent clue Mejia may have had that Ramos was defrauding him was the rejection of his motion to reopen for lack of a filing fee in 1998. It was not unreasonable, however, for Mejia to rely on his attorney's subsequent assurances, and believe, not that he was being defrauded, but merely that the DHS had made a mistake. This is not the kind of evidence that would cause a reasonable person to definitively know that he had been defrauded. *See Singh*, 491 F.3d at 1096.

The BIA found that Mejia "essentially acknowledged in his July 2005 Sworn Declaration having known already of such problems back in 1998." This statement by the BIA of "having known" appears to refer to the problem with the filing fee. On this basis, the BIA found that Mejia was not eligible for equitable tolling of the NACARA deadline.

**[9]** But Mejia did not, in his 2005 declaration, "essentially acknowledge" that he had definitively learned by 1998 that Ramos was fraudulently representing him. Instead, Mejia stated the following about the events of 1998:

> the motion which Byron Ramos prepared and filed the following month was rejected by the Immigration Court with a letter asking me to pay a $110 filing fee. In response, Byron Ramos assured me that the Court had made a mistake and that he would timely resubmit my motion. Thereafter, on the numerous occasions when I asked Byron Ramos for the status of my case, he continued to assure me that my motion remained properly pending and that the Immigration Court was just waiting until the INS granted my wife's NACARA application to reopen my case.

This is not an acknowledgment that Mejia had definitively learned that he was victim of fraud. Nor is it evidence that Mejia was effectively put on notice of fraud and thereafter sat on his claim, failing the test of due diligence. Mejia did what a reasonable person would do in the situation; he relied on his lawyer and assumed that his lawyer was correct in stating that it was the DHS that had made a mistake. He reasonably waited for his wife's claim to be settled before his would be. The BIA's decision against equitable tolling was an abuse of discretion; the NACARA § 203(c) deadline was equitably tolled.

Given that, in 2006, an ICE Assistant Chief Counsel conceded that Mejia had established the requisite hardship and

met the statutory requirements for NACARA relief, and once equitable tolling is recognized, this case is reduced to the denial of relief based on a fraudulent attorney failing to include a $110 filing fee with Mejia's April 10, 1998 motion to reopen, and then lying about it. Such a result would blindly ignore the Congressional intent inherent in NACARA, and break up a family otherwise entitled to relief. A calculation and application of the period of equitable tolling corrects this result.

**[10]** There are two key steps in the process of Mejia definitively learning of Ramos's fraud. Sometime around January 7, 2005 Mejia was told that Ramos was not a licensed attorney, while also learning that Ramos's efforts had, nonetheless, succeeded in securing relief for his wife. On April 30, 2005, Mejia's present attorney called the Executive Office for Immigration Review's automated system and found no record that any motion to reopen had ever been filed by the fraudulent "attorney" on Mejia's behalf. In *Albillo-De Leon*, 410 F.3d at 1099-1100, the court continued to toll the deadline despite petitioner's early suspicions about his "attorney" and despite being told by a court clerk that there was no record of his motion; it was only after receiving a FOIA response that showed a motion had never been filed and that the "attorney" was not licensed that the petitioner "definitively learned" of the fraud. Applying the same rationale, Mejia did not definitively learn that he was subject to fraud until he learned that his "attorney" was not licensed and was told by the court that no motion on his behalf existed. That was when Mejia finally obtained the "vital information bearing on the existence of the claim." *Singh*, 491 F.3d at 1096. That date is April 30, 2005.

**[11]** The period of equitable tolling began when Mejia first contacted Ramos, March 31, 1998. With an April 30, 2005 end date, the period of tolling was seven years and one month. The NACARA § 203(c) deadline in question was September 11, 1998. 8 C.F.R. 1003.43(e)(1).**[3]** The deadline then was tolled until October 11, 2005.

---

**[3]**The deadline in question was for a motion to reopen that included the requirement that the applicant be married to an ultimate NACARA benefi-

**[12]** Before this date, on July 5, 2005, Mejia filed a "Motion to Reopen Deportation Proceedings to Rescind an Order of Deportation Entered in Absentia." As part of that motion, Mejia requested adjudication *nunc pro tunc* of his rejected April 10, 1998 NACARA § 203(c) motion to reopen. Alternatively, he asked that the new motion be adjudicated for such purposes on the basis of equitable tolling. We hold that this motion timely meets the NACARA § 203(c) requirements, making Mejia eligible for NACARA relief.

## IV.   CONCLUSION

Mejia received effective notice of his 1997 hearing. Despite *Kucana*, the BIA reversal of the IJ's *sua sponte* reopening is not subject to review by this court. We do not disturb these BIA decisions. However, we reverse the BIA decision that Mejia's NACARA application was not subject to equitable tolling and remand for further proceedings consistent with this decision.

GRANTED IN PART, DENIED IN PART AND REMANDED, each party to bear its own costs.

---

ZOUHARY, District Judge, concurring in part, dissenting in part and concurring in the judgment:

I concur with most of the majority's decision and with the judgment. I respectfully part ways, however, with regard to

---

ciary. *See* 8 C.F.R. §§ 1003.43(e)(1), (b)(4), and (d)(5). It was not, as the DHS seems to suggest, a marriage deadline. Mejia needs only to have been married by the tolled deadline. This is not only a logical result, but also the equitable result as a legitimate attorney would have alerted Mejia to the fact that the only way he could remain in the U.S. with his soon-to-be wife and their two children would be to move the date of his wedding up by two months. It seems safe, but ultimately unnecessary, to assume that he would have done so to keep his family intact.

the majority's conclusion that we are unable to review the BIA's decision to overturn the IJ's *sua sponte* motion to reopen. I believe the Supreme Court's decision in *Kucana v. Holder,* 130 S. Ct. 827 (2010), implicitly overrules this Court's earlier decision in *Ekimian v. INS,* 303 F.3d 1153 (9th Cir. 2002).

I agree with the concurring opinion in *Zetino v. Holder,* 596 F.3d 517, 529 (9th Cir. 2010) that *Heckler v. Chaney,* 470 U.S. 821 (1984), was misapplied in *Ekimian.* Specifically, *Heckler* concluded that "*Congress* can restrict the jurisdiction of federal courts over certain agency actions under the APA by deeming them 'discretionary' and drafting 'statutes' that provide a court 'no meaningful standard against which to judge the agency's exercise of discretion.' " *Id.* at 830.

*Heckler* however does not allow an agency to restrict judicial review of its own decisions by declaring those decisions discretionary, or by providing no standard for review. This would have the undesirable effect of allowing agencies to insulate themselves from judicial review, which "contravenes the 'presumption . . . "that executive determinations are generally subject to judicial review."' " *Zetino,* 596 F.3d at 529 (Lawson, J., concurring) (citing *Kucana,* 130 S. Ct. at 839).

Moreover, this Court recently published an amended opinion in *Zetino* which casts further doubt on the precedential value of *Ekimian.* Unlike the original version, the amended opinion reviews the BIA's denial of petitioner's motion to accept an untimely brief. That is precisely the process suggested in the original concurring opinion. *See Zetino,* 622 F.3d 1009, 1012-13 (9th Cir. 2010) (amending 596 F.3d 517).

While neither *Zetino* nor *Kucana* deal with the exact issue at hand—our ability to review the BIA's decision to overturn the IJ's *sua sponte* reopening—I do not believe there is any reason to treat review of the BIA's decision to reverse an IJ's *sua sponte* reopening differently from the question reached by

*Kucana* the reviewability of the BIA's denial of a motion to reopen removal proceedings. In *Kucana*, there was no clear evidence that Congress intended to make *sua sponte* actions unreviewable by courts. *See Kucana,* 130 S. Ct. at 827-28.

Likewise, there is no clear evidence here that Congress intended to make unreviewable the similar case of the BIA's reversal of a *sua sponte* motion to reopen by an IJ. And a decision to reopen can be made under "exceptional circumstances," a standard that allows for jurisdiction and review by the courts.

Based on the *Kucana* and *Zetino* decisions, I would find that we have jurisdiction to review the BIA's decision and, therefore, respectfully dissent from that portion of the majority's opinion.