FILED
United States Court of Appeals
Tenth Circuit

September 20, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ARTURAS BAKANOVAS, EDITA
BAKANOVAS, KAROLINA
BAKANOVAS,

        Petitioners,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 11-9500
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLLOWAY**, and **PORFILIO**, Circuit Judges.

---

    Israeli citizens Arturas Bakanovas, Edita Bakanovas, and their daughter,

Karolina Bakanovas, seek review of an order of the Board of Immigration

Appeals (BIA) denying their motion to reopen. Because the denial of a motion to

reopen is "a final, separately appealable order," *Infanzon v. Ashcroft*, 386 F.3d

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1359, 1361 (10th Cir. 2004), we have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's order.  We affirm.

## I. BACKGROUND

In 1990 Arturas Bakanovas and his wife, Edita Bakanovas, emigrated from Lithuania to Israel and became Israeli citizens.  Karolina was born in Israel in August 1990.  In 1991 they entered the United States on visitor visas and, after they overstayed their visas and the Immigration and Nationalization Service issued them orders to show cause why they should not be deported, Arturas (with Edita and Karolina as derivatives) applied for asylum.  The asylum application stated that Arturas had suffered persecution in Israel because of his Catholic faith and Lithuanian origin, that Edita had suffered persecution in Lithuania because of her Jewish faith, and that they both suffered persecution in Israel because of their interfaith marriage.

In 1994 an immigration judge (IJ) denied the Bakanovases asylum and withholding of deportation but granted their request for voluntary departure, with an alternate order of deportation to Israel or Lithuania if they remained in the United States after the voluntary-departure deadline.  In October 2000 the BIA affirmed the order, and this court affirmed that decision, *see Bakanovas v. INS*, 19 F. App'x 823 (10th Cir. 2001).  Although laws implementing the United Nations Convention Against Torture (CAT) went into effect while their appeal

was pending before the BIA, their counsel allegedly did not inform them that relief under the CAT might be available.

The Bakanovases did not leave the United States, and in January 2007 they were arrested on immigration charges and released on bond. They then met with their current attorney, who informed them in April 2007 of the availability of relief under the CAT. In March 2010, almost three years later, they filed a motion to reopen with the BIA, which the BIA denied. They petition this court to review that decision.

## II. DISCUSSION

"We review the BIA's decision on a motion to reopen for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Galvez Piñeda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) (internal quotation marks omitted).

"To avoid unnecessary delay in immigration proceedings, motions to reopen must be brought promptly." *Id.* "[A]n alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). Because the Bakanovases filed their motion

to reopen almost ten years after the final administrative decision in their removal proceedings, their motion is untimely.

The 90-day period may, however, be tolled or overridden in certain circumstances, three of which are relevant to the Bakanovases' motion. First, "[t]he 90-day period may be extended . . . by equitable tolling." *Galvez Piñeda*, 427 F.3d at 838. Second, the 90-day period does not apply to a motion to reopen "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii). Third, the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a).

The Bakanovases contend that their delay should be excused on the following grounds: (1) that the 90-day period should be equitably tolled because their counsel was ineffective in failing to inform them of the availability of relief under the CAT, (2) that changed conditions in Lithuania and Israel require reconsideration of their application for asylum and withholding of removal, and (3) that their case presents exceptional circumstances requiring the BIA to exercise its authority to reopen sua sponte. We address their arguments in that order.

### A.    Equitable Tolling

The Bakanovases contend that they were denied effective assistance of counsel because their former counsel did not inform them of the availability of

relief under the CAT when it became available in 1999, while their original appeal was pending before the BIA. They argue that as a result the period from the BIA's decision until their motion to reopen should be equitably tolled. For equitable tolling to be available, however, "an alien must demonstrate not only that the alien's constitutional right to due process has been violated by the conduct of counsel, but that the alien has exercised due diligence in pursuing the case during the period the alien seeks to toll." *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005) (internal quotation marks omitted). The Bakanovases cannot show due diligence. Even if the alleged ineffective assistance of counsel excuses some of their delay, they were informed in 2007 of the availability of relief under the CAT, yet it was another three years before they moved to reopen. And their two excuses for the post-2007 delay are inadequate.

First, the Bakanovases try to justify their delay on the ground that they were waiting for comprehensive immigration reform. But because "[t]imeliness can be critical in immigration cases[,] [r]emovable aliens are not permitted to delay matters by pursuing multiple avenues of relief seriatim when no reason suggests why they could not be pursued simultaneously." *Galvez Piñeda*, 427 F.3d at 839. The Bakanovases provide no reason why they could not file their motion to reopen while simultaneously awaiting comprehensive immigration reform.

Second, the Bakanovases say that that their delay should be excused because they could not afford an attorney. But an alien has no constitutional right to an attorney in removal proceedings. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999) (per curiam). The Bakanovases' inability to afford an attorney therefore cannot excuse their delay.

We hold that the BIA did not abuse its discretion in deciding that equitable tolling did not excuse the Bakanovases' tardiness in moving to reopen.

**B. Changed Circumstances**

The Bakanovases argue that changed circumstances in both Lithuania and Israel render the 90-day limitation inapplicable to their motion to reopen. *See Wei v. Mukasey*, 545 F.3d 1248, 1254 (10th Cir. 2008) ("[A] motion to reopen to apply for asylum based on proof of changed country conditions is not barred by the time restriction on filing motions to reopen if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." (internal quotation marks omitted)). In their motion to reopen, the Bakanovases argued that recent State Department reports showed an increase in human trafficking in both countries and that Karolina's Israeli and Jewish heritage made her a likely target for trafficking. They also argued that the reports showed discrimination on the basis of religion, ethnicity, and gender in Israel, and that even though both countries are signatories of the CAT, the Israeli and Lithuanian governments' disregard of the CAT presented an increased

likelihood that they will be tortured in both countries on the basis of their ethnicity, nationality, religion, or gender.

The BIA rejected these arguments on the ground that the Bakanovases had not "meaningfully contrasted the current conditions with those that existed at the time of their January 1994 hearing before the Immigration Judge." R., Vol. 1 at 4. It explained that their motion made no reference to "specific text" in the State Department reports "showing that, since their hearing, conditions for ethnic and religious minorities, women, or those in mixed marriages have deteriorated in either country in a way that materially impacts their eligibility for asylum or withholding of deportation." *Id.* It added that the evidence did not show that they faced any "increased individualized risk of becoming [human] trafficking victims" or that "there have been changed conditions that make it more likely than not that the government of either country will target them for torture." *Id.*

The Bakanovases' brief in this court contends that their evidence shows an increase in government corruption, hate crimes, ethnic and racial violence, and human trafficking in Lithuania, and an increase in government corruption and human trafficking in Israel, as well as an increase there in violence against women, discrimination against interfaith marriages, and societal abuses against Christians.

Because the Bakanovases did not raise government corruption in their motion to reopen, we will not consider that issue. *See Garcia-Carbajal v. Holder*,

625 F.3d 1233, 1237 (10th Cir. 2010) ("It is a fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court."). As for the evidence of hate crimes in Lithuania, the Bakanovases have not shown that any such crimes were "inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation marks omitted). On the contrary, the Bakanovases' evidence that Lithuania has increased the number of hate-crime prosecutions in recent years and that police have been active in investigating hate crimes targeted at Jewish communities suggests increased government intolerance for hate crimes. *See* R., Vol. 1 at 142–143. In any event, the Bakanovases' evidence of hate crimes and of racial and ethnic violence, and even the evidence of recent increases in such misconduct, provides no comparison with the extent of misconduct in 1994.

Turning to human trafficking, the Bakanovases contend that, as "a young woman from a poor family of Jewish and Russian heritage," Pet'rs Br. at 19, Karolina would be a target for sex traffickers in Lithuania and Israel. But they have not shown why she would be at an increased risk in either country. The record suggests the contrary. As the BIA noted, the reports relied upon by the Bakanovases indicate that trafficking victims are often lured by deceptive

employment offers, and the Bakanovases' awareness of these tactics makes it unlikely that Karolina would be tricked by such schemes.

The Bakanovases' remaining claims relating to Israel also lack merit. They have not explained why they would be at any greater risk because of discrimination against evangelical Christians and Messianic Jews. And reports of an increase in violence against women in Gaza, of torture or abuse of Palestinian detainees by Israeli security forces, or of torture by the Palestinian Authority obviously do not suggest any risk to the Bakanovases, much less an increase in risk compared to 1994.

In short, the BIA did not abuse its discretion in rejecting changed circumstances as a ground for reopening the proceedings.

## C.    Sua Sponte Authority

The Bakanovases argue that the circumstances of their case obliged the BIA to reopen their case sua sponte under 8 C.F.R. § 1003.2(a). We lack jurisdiction to review that argument, however, "because there are no standards by which to judge the agency's exercise of discretion." *Infanzon*, 386 F.3d at 1361.

The Bakanovases contend that the recent Supreme Court decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), requires use to revisit *Infanzon*. But that opinion specifically "express[ed] no opinion on whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*." *Id.* at 839 n.18. Therefore, *Kucana* provides no ground for us to depart from circuit

-9-

precedent. *See, e.g., Mejia–Hernandez v. Holder*, 633 F.3d 818, 823–24 (9th Cir. 2011); *Neves v. Holder*, 613 F.3d 30, 34–35 (1st Cir. 2010); *Ochoa v. Holder*, 604 F.3d 546, 549 n.3 (8th Cir. 2010); *cf. Gor v. Holder*, 607 F.3d 180, 182 (6th Cir. 2010) (stating that panel is bound by circuit precedent but urging en banc reexamination).

## III.    CONCLUSION

Because we lack jurisdiction to review the BIA's refusal to reopen sua sponte, we DISMISS the Bakanovases' petition insofar as it challenges that refusal; in all other respects we DENY the petition, AFFIRMING the BIA's denial of the motion to reopen.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

-10-