NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 13 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUTFI GHOUSHEH, | No. 15-73386 |
| Petitioner, | Agency No. A070-064-547 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 14, 2018
Submission Deferred March 15, 2018
Resubmitted April 13, 2018
San Francisco, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and RAKOFF,** Senior
District Judge.

Petitioner Lutfi Ghousheh challenges the Board of Immigration Appeals'

("BIA") determination that Ghousheh is subject to the "terrorism bar" and is thus

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jed S. Rakoff, Senior United States District Judge for
the Southern District of New York, sitting by designation.

ineligible for cancellation of removal.  We grant his petition and remand his case to the agency for further proceedings.

An alien who "has received military-type training . . . from or on behalf of any organization that, at the time the training was received, was a terrorist organization" is barred from, among other forms of relief, cancellation of removal. 8 U.S.C. § 1182(a)(3)(B)(i)(VIII); *see id.* § 1229b(c)(4).  As relevant here, "terrorist organization" means "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" terrorist activities.  *Id.* § 1182(a)(3)(B)(vi)(III).  It is uncontested that, if not for this terrorism bar, Ghousheh would be eligible for, and entitled to, cancellation of removal.

In 1982, Ghousheh received three days of military training from the Palestinian Liberation Army in Lebanon ("PLA in Lebanon").  The Immigration Judge ("IJ") found that, at the time, the PLA in Lebanon was a subgroup of the Palestinian Liberation Organization ("PLO") and that the PLO was a terrorist organization.  The BIA saw no clear error in these findings, and substantial evidence supports both.[1]

---

[1]  As to the former finding, record evidence indicates that in 1982 countries such as Jordan, Iraq, Syria, and Egypt had PLA brigades attached to, and taking orders from, their respective militaries.  The same evidence, however, indicates that Lebanon did not.  Ghousheh testified that, instead, the PLA in Lebanon was taking at least some of its orders from the PLO.

2

Based on these findings, the BIA concluded that the terrorism bar applied, reasoning that "the PLA [in Lebanon], as part of the PLO, thus was also a terrorist organization," and so Ghousheh had "received military-type training from a terrorist organization**.**" This reasoning conflicts with the plain terms of the statute.[2] Again, as relevant here the term "terrorist organization" means "a group of two or more individuals, whether organized or not," which either (1) "engages in" terrorist activities itself, or (2) "has a subgroup which engages" in terrorist activities. *Id.* § 1182(a)(3)(B)(vi)(III). Although the PLA in Lebanon was clearly "a group of two or more individuals," nothing in the record suggests that, as it existed in 1982, the PLA in Lebanon met either of the other two statutory criteria.

The government urges us to deny Ghousheh's petition nevertheless, arguing that although Ghousheh received military training "from" the PLA in Lebanon, his training was still received "on behalf of" the PLO. But we "cannot deny a petition for review on a ground that the BIA itself did not base its decision." *Hernandez-*

<hr/>

As to the latter finding, an expert in Middle Eastern Studies testified that around the same time the PLO itself engaged in terrorist activities. Record evidence also indicates that a PLO subgroup called Al-Fatah engaged in terrorist activities, including the killing of thirty-four Israelis near Haifa in 1978.

[2] "Where—as here—a BIA decision interpreting a statute is 'unpublished and issued by a single member of the BIA,'" the decision receives only deference "proportional to its thoroughness, reasoning, consistency, and ability to persuade." *Lezama-Garcia v. Holder*, 666 F.3d 518, 524-25 (9th Cir. 2011) (quoting *Mejia-Hernandez v. Holder,* 633 F.3d 818, 822 (9th Cir.2011)).

*Cruz v. Holder*, 651 F.3d 1094, 1110 (9th Cir. 2011). And here the BIA denied relief solely on the ground that Ghousheh received military training "from" the PLA in Lebanon.[3] Indeed, the body of the BIA's decision never mentions the statutory phrase "on behalf of." We therefore grant the petition and remand to the BIA so that the BIA may consider in the first instance whether Ghousheh is subject to the terrorism bar for the reasons on which the Government now relies.

**PETITION GRANTED AND REMANDED.**

---

[3] We review only the BIA's decision, except where it expressly incorporates the IJ's decision. *See Zumel v. Lynch*, 803 F.3d 463, 471 (9th Cir. 2015).