**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORGE MARIO MENDOZA-
MAZARIEGOS,

*Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,

*Respondent.*

No. 05-70163

Agency No.
A91-973-031

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 12, 2007—Pasadena, California

Filed December 6, 2007

Before: Harry Pregerson, Ronald M. Gould, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Pregerson

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R.
Gonzales, as Attorney General of the United States, pursuant to Fed. R.
App. P. 43(c)(2).

16013

**COUNSEL**

Mario Acosta Jr. and Elsa Martinez, Martinez Goldsby & Associates, Los Angeles, California, for the petitioner.

Philip Lewis, Matthew Kline, Randall Whattoff, and Victor Jih, O'Melveny & Myers, Los Angeles, California, pro bono amicus curiae counsel for the petitioner.

Carol Federighi, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Jorge Mario Mendoza-Mazariegos ("Mendoza") petitions for review of the Board of Immigration Appeals ("BIA") order denying his application for cancellation of removal under 8 U.S.C. § 1229b(b). We grant the petition for review on the ground that Mendoza was denied his statutory right to counsel, and we remand for further proceedings.

## I.   Factual and Procedural Background

Mendoza is a native and citizen of Guatemala. He entered the United States without inspection in February 1985, and has since resided in the United States. Mendoza and his wife Beatriz now have three children, ages four, seven, and eleven, who are United States citizens. The family resides in Palmdale, California, where Mendoza works for a church.

On July 20, 1998, the government placed Mendoza in removal proceedings, charging him with being an alien present in the United States without inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i). The Immigration and Naturalization Service[1] ("INS") detained Mendoza at a detention center in Florence, Arizona. Mendoza first appeared before Immigration Judge ("IJ") Scott Jeffries in Arizona on August 7, 1998. Mendoza appeared pro se, declined to be represented by counsel, and conceded his removability. Recognizing that Mendoza was a candidate for cancellation of removal, the government attorney suggested that the IJ inform Mendoza of available relief. The IJ gave Mendoza a cancellation of removal application form and instructed Mendoza to submit the form by the next scheduled hearing.

---

[1]On March 1, 2003, the INS was abolished and its functions transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002), 6 U.S.C. §§ 101-557.

When the hearing resumed in Arizona on August 17, 1998, the IJ accepted Mendoza's submission of the cancellation of removal application. The IJ then set the date of the merits hearing and instructed Mendoza to submit documentation in support of his application, including the birth certificate for his son (Mendoza's other children had not yet been born). Despite being detained in Arizona at the time, Mendoza obtained the documentary evidence from California and submitted it according to the IJ's instructions.

Mendoza appeared in Arizona again on September 8, 1998. At that hearing, IJ Scott Jeffries noted that he had given Mendoza the "wrong application form to fill out." The IJ then gave Mendoza the correct application form. At the government's suggestion, the IJ also informed Mendoza that he could post a bond to be released from custody and have his case transferred to California. The IJ told Mendoza to keep the court aware of his current address so that he could be notified of the next hearing. Mendoza posted bond, was released, and his case was transferred to California. He complied with the IJ's instruction by timely informing the court of his current address.

Following the change of venue, Mendoza appeared before Los Angeles IJ Thomas Y. K. Fong on or about September 24, 1998. Mendoza appeared with a retained attorney, Steven Paek. At the hearing, attorney Paek reiterated Mendoza's wish to apply for cancellation of removal, but stated that he was not prepared to file the application. When the hearing resumed on February 11, 1999, the IJ confirmed receipt of Mendoza's application for cancellation of removal and reset the matter for a merits hearing on August 9, 2000.

Thereafter, Mendoza's case was repeatedly postponed, both because of conflicts on the IJ's calendar and for attorney Paek's benefit. Before the first scheduled merits hearing on August 9, 2000, the IJ advised the parties that he needed to reschedule because of a conflict on his calendar. He asked for

the parties to convene on July 3, 2000 to set a new hearing date. Paek filed a motion informing the court that he was unable to attend the July 3rd hearing because of a Fourth of July celebration with his family. The IJ stated at the hearing that he "certainly [could] understand that because the court did advance the matter." Mendoza appeared alone at the hearing and the parties agreed that the merits hearing would be rescheduled for October 10, 2001. On October 10, 2001, both Mendoza and attorney Paek appeared, but a priority case pushed Mendoza's hearing out of its scheduled time slot. Attorney Paek apparently was unable to wait for the case to be heard, and the IJ informed him that rescheduling was "not a problem." The IJ informed the parties that "unfortunately because of my crowded calendar almost two years is going to occur between your next hearing and today's date." The hearing was continued to September 18, 2003.

At each of these hearings, IJ Fong instructed attorney Paek to submit all supporting documents at least two weeks before the next scheduled hearing date. Each time, the IJ told attorney Paek that he needed to conduct a criminal record check so that the IJ could verify Mendoza's eligibility for cancellation of removal.[2] The IJ also told Mendoza at each hearing that he was responsible for showing up at the next hearing ready to present his case and for informing the court of any change of address, regardless of whether he had an attorney.

On September 18, 2003, Mendoza's long-delayed hearing before IJ Fong resumed. Before the hearing date, Mendoza had tried to contact Paek, but was unable to do so. Because

---

[2]At the July 3, 2000 hearing which Paek did not attend, the IJ told Mendoza that "at the next hearing [Paek] will be responsible for you and him to present the evidence necessary to prove your case. And that includes an updated and current criminal record check to insure that you do not have a criminal record that would bar you or that at least I know your criminal activity, if any. He will need to provide me the evidence to prove your legal residence in this country, your good character, the equities and claim that you want me to consider in your favor."

Mendoza was worried that Paek might not show up, he appeared with another attorney, Nana Boachie-Yiadom ("Boachie-Yiadom"), who he had retained the day before. Attorney Paek did not appear at the hearing.

When the hearing began, the IJ questioned Mendoza about why he waited until the day before his merits hearing to retain new counsel.[3] Mendoza attempted to explain that he had been unable to reach attorney Paek before the hearing, in part because a notary who "prepared" the case would not let him talk to attorney Paek.[4] Before Mendoza could offer a full explanation, the IJ told him that attorney Paek had come to the IJ's office early that morning with a different story.[5] The IJ told Mendoza that

> Mr. Paek came in early this morning indicating that he had been trying to get ahold of you and your telephone number had been discontinued — disconnected, you didn't respond to his notices and letters. Now, separate and apart from that notary who may have been assisting him, why didn't you respond to

---

[3]During the hearing, Mendoza spoke in Spanish, communicating with the IJ through an interpreter.

[4]The immigration system in this country is plagued with "notarios" who prey on uneducated immigrants. See *Barroso v. Gonzales*, 429 F.3d 1195, 1197 n.2 (9th Cir. 2005) ("Latino immigrants often mistakenly believe that 'notarios' are lawyers because in many Latin American countries, notarios are 'a select class of elite attorneys subject to rigorous examinations, regulation, and codes of professional responsibility.' " (citation omitted)). In this country, by contrast, notaries sometimes act as gatekeepers for "appearance attorneys." These appearance attorneys are known to represent their clients in immigration court with limited or no knowledge of their client's cases, and some of these attorneys are not in good standing with their local bar associations.

[5]The exact details of the IJ's ex parte conversation with attorney Paek are not available because the conversation occurred off the record. Regardless, such a conversation, occurring without Mendoza's knowledge, appears to be a violation of Paek's ethical obligations, as this conversation clearly damaged Mendoza's chances for relief.

his notices to prepare? Because he was worried, he was concerned that you wouldn't be here and that you weren't prepared because you didn't respond to his indications to come in to prepare the case.

Accepting attorney Paek's allegations as true, the IJ questioned Mendoza about his alleged lack of cooperation with attorney Paek. Mendoza's attempts to explain himself and answer the IJ's questions were fruitless:

Mendoza: The reason, Your Honor, the people in charge of his office would not allow me to get in touch directly with the attorney.

IJ: . . . No, no, no, hold it. Mr. Paek told me he tried to a get ahold of you directly. Why didn't you respond to his inquiries, sir? I'm not interested in these notaries, these unnamed notaries that you claim got in the way. For one thing, sir, who hired these notaries, you, right?

Mendoza: Yes.

IJ: Then, sir, you know the people you hire you can fire, you're the employer not the employee. And sir, nobody unless the guy was holding you physically will stop you from making a phone call or walking down to your attorney's office. You're telling me this notary stopped you from going to your attorney? Stopped you from making a phone call? Stopped you from responding to your attorney's letters?

Mendoza: They said that any question that I had it had to be to them.

IJ:              And, sir, they didn't respond to your let-
                 ters did they?

Mendoza:  They never sent me any letter whatso-
                 ever.

IJ:              Okay. Well, sir, how come you didn't
                 respond to your attorney's letters, the
                 ones he sent you? Why would you listen
                 to a non-attorney and ignore your attor-
                 ney's pleas and requests for you to come
                 in and prepare your case, sir?

Mendoza:  I never received a letter.

The IJ then briefly adjourned the case and sent Mendoza and
attorney Boachie-Yiadom to locate Paek. In a sworn declaration[6]
Mendoza attached to his BIA appeal, Mendoza explained that:

> I met my lawyer [Paek] at the door of the Immigra-
> tion Court when I was leaving the court room to go
> look for him. He was waiting by the door, and he
> took [me] to the side. He said, you have to say that
> I have been trying to call you, and that you failed to
> return my calls; and that the lawyer had mailed
> notices about the court hearing, and that I failed to
> take action. I told him, what are you crazy sir; I am
> the one who has been trying to contact you, and I am
> the one who has been calling you to remind you
> about this hearing. The lawyer said, "If you don't
> swear to those things, then I am not coming into the
> court with you." I said sir; you are asking me to lie
> before the court aren't you. He said "if you don't say
> those things, then I won't go into the courtroom with

---

[6]Mendoza's sworn declaration was part of a State Bar complaint he
brought against Paek.

you.["] I really couldn't believe what I heard from a licensed [attorney].

When Mendoza returned to the IJ and explained what had happened outside, the IJ ordered Mendoza to go outside again and find Paek.[7] Mendoza was unable to find attorney Paek.

When the hearing resumed, the IJ, according to Mendoza, was "steaming mad." Attorney Boachie-Yiadom told the IJ that he wished to represent Mendoza. However, attorney Boachie-Yiadom requested "a short continuance" to familiarize himself with Mendoza's case, explaining that he had obtained Mendoza's file just before the hearing. The IJ told attorney Boachie-Yiadom that there would be no continuance. The IJ told Boachie-Yiadom that he came "a dollar short and too late," and that Mendoza was "not going to get another continuance, not any way for someone to walk in on the trial date with a brand new attorney and then claim he needs a continuance. Not happening, counsel." The IJ then urged attorney Boachie-Yiadom to withdraw, telling attorney Boachie-Yiadom that if he withdrew, Mendoza would proceed pro se. Unable to adequately represent a client whose file he had just received, attorney Boachie-Yiadom withdrew. Boachie-Yiadom stayed in the courtroom for the duration of the proceedings, but only as an observer.

The IJ then engaged in an extended monologue, covering five pages in the transcript, lecturing Mendoza for not responding to attorney Paek's inquiries and for not replacing attorney Paek sooner. Mendoza was not given much of a chance to speak, but was able to explain that "[i]t was very difficult having lost all that money they charged me," suggesting that he was holding out hope that he could talk to attorney Paek because he could not afford another attorney. As the

---

[7]The IJ's request for Mendoza to again go outside and find Paek for the second time is described in Mendoza's sworn declaration, but appears to have happened off the record.

admonishment continued, the IJ noted that, due to his busy calendar, another continuance would push Mendoza's hearing forward two years, into 2005.

In response to the IJ's badgering, Mendoza eventually apologetically acknowledged his "negligence for not getting in touch with an attorney." The IJ then denied the request for a continuance and proceeded with the merits hearing. The IJ's consideration of the merits of Mendoza's cancellation application lasted mere minutes. From the time that Mendoza swore that his application was accurate to the time the IJ told Mendoza that "I can't grant your claim," Mendoza spoke about thirty words, often "no, your honor" or "yes, your honor." The IJ did not question Mendoza about the hardship to his U.S. citizen children. In denying Mendoza's claim, the IJ explained that, without a criminal record check, he could not verify whether any statutory bars applied and whether Mendoza had been a person of good moral character. The IJ granted Mendoza voluntary departure.[8]

Mendoza appealed to the BIA. Mendoza challenged the IJ's denial of a continuance and the denial of relief, and also asserted ineffective assistance of counsel. Mendoza supplemented the record with a copy of a State Bar complaint and the accompanying declaration he had filed against attorney Paek on September 24, 2003.

On December 9, 2003, the BIA adopted and affirmed the IJ's decision. The BIA affirmed the IJ's decision to deny the continuance, noting that "a two-year continuance is an ample period of time to prepare for a merits hearing on a cancellation application." The BIA also rejected Mendoza's ineffective assistance of counsel claim, concluding that Mendoza failed to cooperate with his counsel.

---

[8]When questioned about his criminal record, Mendoza testified under oath that he had never been arrested or convicted of a crime in the United States. The government does not dispute this assertion.

This appeal followed. Mendoza petitions for review, arguing the denial of his statutory right to counsel, ineffective assistance of counsel, and the denial of his due process right to a full and fair hearing.

## II.   Standard of Review

We review de novo the BIA's interpretation of questions of law, such as whether the statutory right to counsel was violated. *See Hernandez-Gil v. Gonzales*, 476 F.3d 803, 804 n.1 (9th Cir. 2007). We review for abuse of discretion an IJ's decision to deny a request for continuance. *See Montes-Lopez v. Gonzales,* 486 F.3d 1163, 1165 (9th Cir. 2007). Because the BIA adopted and affirmed the decision of the IJ, we review the IJ's decision as well. *See Abebe v. Gonzales,* 432 F.3d 1037, 1039 (9th Cir. 2005).

## III.   Denial of Right to Counsel

**[1]** 8 U.S.C. § 1362 guarantees an alien in immigration proceedings a right to counsel of his choice at his own expense. "[F]or an applicant to appear *pro se*, there must be a knowing and voluntary waiver of the right to counsel." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (citation omitted). To obtain a knowing and voluntary waiver of the statutory right to counsel, the IJ must "(1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Id.* (internal citations omitted).

**[2]** Therefore, we first address whether Mendoza explicitly waived his right to counsel. Clearly, he did not. The IJ did not inquire as to whether Mendoza was willing to proceed pro se. It was clear that he did not want to proceed pro se from the fact that he brought another attorney to the hearing.

We next discuss whether, despite the absence of a waiver of the right to counsel, the IJ could nonetheless refuse to grant

a continuance for Mendoza's new attorney to familiarize himself with the case. In *Hernandez-Gil v. Gonzales*, 476 F.3d 803 (9th Cir. 2007), we recently addressed whether the statutory right to counsel is violated when an IJ refuses to grant a continuance after the petitioner's retained counsel does not appear at the merits hearing. We acknowledged that "[a]bsent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing." *Id.* at 807 (quoting *Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005)). However, we also noted that "we cannot allow a myopic insistence upon expeditiousness to render the right to counsel an empty formality." *Id.* at 807-08 (citations and internal quotation marks omitted). After balancing these competing interests, we concluded that "[w]hen an immigrant has engaged counsel and the IJ is aware of the representation, if counsel fails to appear, the IJ must take reasonable steps to ensure that the immigrant's statutory right to counsel is honored." *Id.* at 808.

Thus, the question here is whether the IJ took reasonable steps to ensure that Mendoza's statutory right to counsel was honored. In *Biwot v. Gonzales,* we held that analysis of an IJ's refusal to grant a continuance requires individualized inquiry. We explained that:

> No bright line guides our consideration of what constitutes reasonable time [to find an attorney]. The inquiry is fact-specific and thus varies from case to case. We pay particular attention to the realistic time necessary to obtain counsel; the time frame of the requests for counsel; the number of continuances; any barriers that frustrated a petitioner's efforts to obtain counsel, such as being incarcerated or an inability to speak English; and whether the petitioner appears to be delaying in bad faith.

*Biwot*, 403 F.3d at 1099.[9]

Mendoza did not speak English, was not seeking to delay the proceedings in bad faith, and was only seeking a short continuance. Despite these factors weighing in Mendoza's favor, IJ Fong denied the continuance. The IJ's decision explained that he denied Mendoza the benefit of a short continuance because Mendoza had "been given more than four years to present his case" and that he had "failed to appear to prosecute his claim." This harsh conclusion is not supported by the record. The IJ's decision, later adopted and affirmed by the BIA, was instead based on three erroneous conclusions. First, the IJ inaccurately blamed Mendoza for the fact that his case had previously been continued multiple times. Second, based in large part on his ex parte conversation with attorney Paek, the IJ concluded that Mendoza was negligent in pursuing his case and in deciding to hire a new lawyer just before the hearing. And finally, the IJ's decision to refuse the continuance was undoubtedly driven by the reality that the short continuance attorney Boachie-Yiadom requested would have required a two-year delay. We discuss below why none of these three reasons provided the IJ with justification to deny the continuance and require Mendoza to proceed pro se.

### 1.   Confusion Over Previous Delays

Both the IJ and the BIA inaccurately summarized the events which led to the lengthy delays in the case. In his decision, the IJ found that Mendoza "has been given a number of continuances, most, if not all, for his benefit because he was not ready to proceed." In fact, as the chart below illustrates, none of the previously granted continuances were requested

---

[9]*Biwot* dealt with a petitioner attempting to find an attorney for the first time. Here, Mendoza, like the petitioner in *Hernandez-Gil*, did have an attorney, but his attorney did not show up to the scheduled hearing. Though these situations are different, we believe that a similar fact-specific approach is appropriate.

by Mendoza because he was unprepared. Instead, the continuances were a result of, among other things, a mistake by the Arizona IJ, a change in venue to Los Angeles, a conflict on attorney Paek's calendar, a conflict on the IJ's calendar, and a priority case that took precedence over Mendoza's case.

| Date of Proceeding | Details of Proceeding | Reason for Continuance |
|---|---|---|
| Aug. 7, 1998 | Mendoza conceded removability | For preparation of cancellation of removal application at suggestion of government attorney |
| Aug. 17, 1998 | IJ accepted cancellation of removal application | For merits hearing |
| Sept. 8, 1998 | IJ discovered he had given Mendoza the wrong form | For preparation of correct form |
| Dec. 1, 1998 | Initial hearing after case transferred to Los Angeles | For Paek to file the cancellation of removal application |
| Feb. 11, 1999 | IJ accepted cancellation of removal application and scheduled merits hearing for Aug. 9th, 2000 | For merits hearing |

| | | |
|---|---|---|
| July 3, 2000 | Scheduling hearing. Attorney Paek did not show up because of his family's Fourth of July celebration. Merits hearing scheduled for first available date, Oct. 10, 2001 | Rescheduling required because of IJ's conflict with Aug. 9th, 2000 date |
| Oct. 10, 2001 | Rescheduled merits hearing for first available date, Sept. 18, 2003 | Priority case took precedence, attorney Paek unable to wait for that case to end[10] |
| Sept. 18, 2003 | Merits hearing conducted | Continuance denied |

**[3]** The above chart illustrates that, contrary to the IJ's assertion that Mendoza was to blame for the lengthy delays, Mendoza timely complied with the instructions he received from the IJs.[11] He appeared at every hearing at the appointed time. He filed his initial application for cancellation of removal while being detained in Arizona, and even gathered

---

[10]The IJ's decision stated that on October 10, 2001, attorney Paek "requested a continuance not only orally but in writing indicating that they were not prepared to go forward." At oral argument in front of this court on July 12, 2007, the government acknowledged that this statement was not accurate. The October 10, 2001 transcript reflects that the case was ready to proceed but that attorney Paek requested a continuance because a priority case had to be heard first and he was not able to wait for it to be heard. The IJ's response to Paek's request was "[a]ll right. Not a problem, counsel. We'll reset this matter then pursuant to your request." The matter was then set for hearing on September 18, 2003, almost two years later.

[11]The IJ faulted Mendoza for not completing his criminal record check, despite the fact that, as mentioned above, the IJ made it clear at the previous hearings that attorney Paek, not Mendoza, was responsible for this task.

supplemental information from his family in California during his detention. Mendoza also, as instructed by the court, dutifully notified the court of his changed address.

**[4]** Thus, when Mendoza was deserted by attorney Paek, his retained counsel, and requested a brief continuance so that his newly hired attorney Boachie-Yiadom could prepare to represent him, he was not requesting "another" continuance, as the IJ suggested. Rather, having found himself abandoned by his retained attorney, Mendoza was trying to preserve his right to counsel.

### 2.   *Mendoza's Decision to Hire a New Lawyer*

The IJ was clearly upset with Mendoza for his decision to hire a new lawyer just one day before the merits hearing. At the hearing, the IJ criticized Mendoza for "just let[ting] the thing ride for almost two years" and stated that "I can't understand why you would sit around for almost two years and then at the last minute say, gee, the people I hired to help me didn't do their job, I better go get a new one." The IJ also made clear at the hearing that his frustration with Mendoza's decision was driven in no small part by attorney Paek's ex parte comments that morning.[12] He told Mendoza that "*more importantly*, sir, as I stated, Mr. Paek came in early this morning saying, Judge, I don't know whether my client is going to show up because I se[n]t him letters and he hasn't responded to me." (emphasis added).

---

[12]The fact that attorney Paek did not appear on the record raises questions about Paek's credibility. In light of the serious accusations attorney Paek made against the client he was retained to represent, the IJ should have ordered Paek to attend the merits hearing. Having attorney Paek reiterate his accusations during the hearing would have ensured that they were made on the record. More importantly, it would have given Mendoza the opportunity to refute the accusations and request that attorney Paek offer some evidence (such as copies of the letters that he allegedly sent) of his attempts to contact Mendoza.

It is not clear why the IJ would believe, without further inquiry, attorney Paek's accusations that Mendoza, facing deportation and permanent separation from his family, completely failed to prepare his case by ignoring his lawyer's attempts to contact him for his merits hearing.[13] In his final decision, the IJ did not mention his ex parte, off-the-record conversation with attorney Paek. Instead, IJ Fong relied on his conclusion that Mendoza "ultimately admitted it was his negligence and failure to prepare and could not give an excuse or reason for another continuance."

[5] This conclusion is not supported by the record. The IJ's statement that Mendoza "could not give an excuse or reason for another continuance" is flatly contradicted by the record. In fact, much of the hearing concerned Mendoza's explanation about why he had to retain a new attorney.[14] Further, the IJ's statement that Mendoza "ultimately admitted" his negligence relies on a comment made by Mendoza that does not deserve significant weight. The IJ's conclusion was based on Mendoza's statement that "I acknowledge before you that a great part of all this has been negligence for not getting in touch with an attorney. I think I don't deserve an opportunity. Whatever your decision is I will abide by that."

Mendoza made this statement after the IJ had just engaged in an extended monologue lecturing Mendoza for failing to hire a new attorney sooner. It also directly followed the IJ's interrogation regarding whether Mendoza had "good cause" for a continuance. In this discussion of "good cause," Mendoza clearly did not understand the questions or the legal con-

---

[13]The IJ made no adverse credibility finding in his decision. Thus, we must assume that the IJ found Mendoza credible, and accept Mendoza's sworn testimony as true. *See Recinos de Leon v. Gonzales*, 400 F.3d 1185, 1191 (9th Cir. 2005) ("[I]n the absence of a clear adverse credibility finding, we take the petitioner's testimony to be true.").

[14]There is no mention in the IJ's decision of Mendoza's claim that attorney Paek deserted him, which seems strange given the central role it played in Mendoza's request for the continuance.

cept of "good cause." To the extent that Mendoza understood the concept, he seemed to have confused good cause for the continuance with good cause for granting his cancellation application. Despite the fact that Mendoza was unfamiliar with both the language and the legal system, proceeding pro se with the help of an interpreter, the IJ showed no patience for Mendoza's attempts to explain why he had good cause, immediately cutting Mendoza off each time he tried to talk:

> IJ:          Now, what are the grounds that you believe are good cause for granting you another two year continuance?
>
> Mendoza: I have an old child, Your Honor.
>
> IJ:          No, sir, that's not a ground. That's already in the record.
>
> Mendoza: May I finish?
>
> IJ:          You mean if I wait long enough the child will get even older and then I —
>
> Mendoza: May I — may I —
>
> IJ:          — should grant it again?
>
> Mendoza: — finish, Your Honor?
>
> IJ:          No. No, sir, that's not a good ground. You can forget that one.

After the IJ had lectured Mendoza on his failure to fire his attorney and after Mendoza had that exchange regarding "good cause," Mendoza eventually gave up and offered that "whatever your decision is I will abide by that." Mendoza's pitiful statement, however, does not indicate that he believed he was at fault for the five years of repeated continuances or

that he should forfeit his right to counsel for deciding to hire a new attorney just before the hearing. Rather, his words reflect that he eventually gave in to an authority figure who had berated him for much of the hearing and who had already decided not to grant him a continuance.

Even if Mendoza should have fired attorney Paek sooner, this misstep does not justify a forfeiture of his right to counsel. Mendoza hired attorney Paek, a licensed professional with knowledge of the law, to help him navigate the maze that is our immigration system. And, like many similarly situated aliens, even when unsatisfied with the quality of representation, Mendoza was reluctant to leave attorney Paek because of the fear that the departure would negatively affect his chances for relief.

[6] Thus, Mendoza's continued trust in attorney Paek does not constitute negligence or an attempt to delay the case in bad faith. In fact, it would have been reasonable for Mendoza to rely on his counsel's purported knowledge and experience and to trust that attorney Paek would protect his interests. Instead, Mendoza's sworn testimony indicates that he did much more than just trust that his attorney would do the job he was hired and paid to do. Mendoza repeatedly called attorney Paek's office inquiring about his case. Paek's office told Mendoza that any question "had to be to them" and refused to let him speak to the attorney. When attorney Paek's office was not responsive, Mendoza was reluctant to give up on him because "it was very difficult having lost all that money they charged me." Quite reasonably, the prospect of hiring another lawyer was daunting for someone of Mendoza's modest means. However, when Mendoza became convinced that attorney Paek would not represent him adequately (or at all), he retained a second attorney, attorney Boachie-Yiadom. Considering Mendoza's lack of English proficiency, his unfamiliarity with the U.S. legal system, and his retention of a licensed professional, there is no doubt that Mendoza was not negligent in pursuing his case. The fact that the IJ would have

dealt with his attorney in a manner different from the way
Mendoza dealt with attorney Paek does not justify the IJ's
denial of a short continuance, which effectively denied Men-
doza his right to counsel.[15]

### 3.    The Crowded Docket of the Immigration Court

[7] Though the IJ does not specifically cite his crowded
docket in the decision, it is clear from the hearing transcript
that the two-year delay that would have been required to grant
Boachie-Yiadom's request for a "short continuance" was a
significant reason why the request was not granted. This is not
an acceptable justification for the denial of the right to coun-
sel. The IJ, BIA, and the government all repeatedly lament
that Mendoza's proceeding had stretched on for almost five
years. It should be clear to the government that Mendoza
should not be blamed for the fact that two minor scheduling
conflicts required that his case be delayed for three years.
Neither is it Mendoza's fault that the short continuance attor-
ney Boachie-Yiadom requested would have required another
two-year delay. It is disturbing that an individual petitioner
was, in effect, punished for the crowded docket of the immi-
gration courts. Petitioners should not be forced to proceed
without counsel because of the scheduling problems of the
immigration court. As frustrating as delays might be, an

---

[15]The denial of the continuance is especially difficult for us to uphold
because IJ Fong did not sufficiently ascertain the details of Mendoza's
efforts to contact his counsel. The IJ told Mendoza he was not interested
in hearing about the notary, despite the fact that the notary was clearly a
central figure in Mendoza's relationship with attorney Paek. The IJ then
criticized Mendoza for mentioning the notary, saying it was "easier to
blame unnamed people, people no one can ever identify or find them to
get their side, let alone substantiate what you claim. It's easier to make a
claim that someone unnamed and unknown and whereabouts unknown is
at fault." This criticism is ironic, given that the IJ did not give Mendoza
the chance to identify the notary, and given that the IJ disbelieved Men-
doza based on Paek's statements made off the record, where Mendoza
could not effectively challenge them.

immigrant's right to counsel should not be sacrificed because of the shortcomings of the immigration system itself.

**[8]** Thus, Mendoza's right to counsel was violated because, when Mendoza's attorney did not show up, IJ Fong did not take reasonable steps to ensure that Mendoza's statutory right to counsel was honored. Neither the previous continuances, nor Mendoza's decision to hire a new lawyer, nor the significant delay a continuance would have required, were sufficient reasons to deny a continuance and require Mendoza to proceed without counsel.

## IV.   Prejudice

Our determination that Mendoza's statutory right to counsel was violated is not the end of our analysis. As we noted in *Hernandez-Gil,* "it is unsettled whether there must be a showing of prejudice where, as in this case, counsel has been effectively denied." 476 F.3d at 808 (citations omitted). Here, because we conclude that Mendoza was clearly prejudiced by the denial of his statutory right to counsel, "we again leave unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removal proceedings." *Id.* (citation omitted).

**[9]** To establish prejudice, Mendoza "must show that the denial of his right to counsel potentially [affected] the outcome of the proceedings." *Id.* (citations and internal quotation omitted). Here, the IJ's denial of Mendoza's right to counsel potentially affected the outcome of the proceedings. The IJ denied Mendoza's cancellation of removal application "for failure to establish his statutory eligibility of good moral character" and for "failing to establish that he has not been convicted of specific crimes which under the law would be statutory bars for relief of cancellation of removal." This decision principally rested on the fact that Mendoza had not completed a criminal record check, which the IJ had previously admonished attorney Paek about on numerous occasions.

Mendoza testified that he had no criminal record. This is not controverted by the government. A competent counsel would have obtained the background check so Mendoza could meet the necessary requirement for cancellation of removal.

**[10]** Having proved that he did not have a criminal record, Mendoza would have been given the opportunity to demonstrate exceptional and extremely unusual hardship on his family, also required for cancellation of removal. Mendoza could have brought to the IJ's attention the facts surrounding Mendoza's long residence in the United States and the potential adverse impact of removal on his three United States citizen children. As it was, Mendoza was not even questioned about his children because the IJ determined that he could not meet the other requirements. Thus, the denial of counsel did prejudice Mendoza.

## V.    Conclusion

We hold that petitioner Mendoza was effectively denied his statutory right to be represented by counsel. In light of this holding, we decline to reach Mendoza's other contentions. Mendoza's petition for review is granted. The order that Mendoza voluntarily depart from the United States is vacated, and the case is remanded to the BIA for further proceedings consistent with this opinion.[16]

**Petition GRANTED.**

---

[16]We also recommend that, on remand, Mendoza's hearing be held before a different immigration judge. *See Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1059 (9th Cir. 2005).