**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELZA AVAGYAN,

Petitioner,

v.

ERIC H. HOLDER JR., Attorney General,

Respondent.

No. 06-73982

Agency No.
A095-193-352

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 8, 2010—Pasadena, California

Filed July 1, 2011

Before: Betty B. Fletcher, Marsha S. Berzon, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge Callahan

## COUNSEL

Artem M. Sarian, Esq., Glendale, California, for the petitioner.

Edward John Duffy, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Elza Avagyan petitions for review of the Board of Immigration Appeals's (BIA's) denial as untimely of her motion to reopen removal proceedings to apply for adjustment of status, on account of ineffective assistance of counsel. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). *See De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004). The denial of a motion to reopen is reviewed for abuse of discretion. *Id.* We grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

**I.**

Avagyan, a seventy-one year old native of Turkmenistan and a citizen of Armenia, came to the United States on a visitor's visa in March 2001. She overstayed her visa and filed an application for asylum and withholding of removal on October 16, 2001, stating that she had been persecuted in Armenia due to her political activities. The INS charged Avagyan with removal on January 2, 2002.[1] Avagyan's daughter, Naira Vartanyan, has lived in the United States since 1989, and became a naturalized United States citizen on March 28, 2003.

In April 2002, Avagyan retained Ron Martinez (a notario)[2]

---

[1]"The INS ceased to exist in 2003, and most of its functions were transferred to the Department of Homeland Security" and Immigration and Customs Enforcement. *See*, *e.g.*, *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 n.7 (9th Cir. 2007).

[2]The term "notario" or "notary" in our immigration case law refers to individuals who either (a) hold themselves out as immigration law experts,

and Joel Spence (an attorney) to represent her. Avagyan communicated primarily with Martinez, who told her that Spence would represent her for $2000. Avagyan first met Spence at a removal hearing on April 16, 2002. He did not ask her any questions about her case. The Immigration Judge (IJ) set Avagyan's removal hearing for November 5, 2003.

Avagyan had no contact with Spence between April 16, 2002 and November 3, 2003; during that time, she met Martinez once, for the sole purpose of paying him $750 in attorney's fees. On November 3, 2003, two days before Avagyan's scheduled hearing, she met Spence in the foyer of an office building. Spence asked Avagyan whether she had any money and whether she wanted to continue the case. When Avagyan insisted on proceeding with the hearing, Spence instructed her to meet him in court and "be ready." He did not ask any questions about her case, describe the hearing process, help prepare Avagyan to testify, or provide information about asylum law.

Prior to November 3, 2003, Avagyan asked Martinez if Vartanyan, as a United States citizen, could help her stay in the country. Martinez told her that if the IJ denied Avagyan's application for asylum and withholding of removal, then Avagyan could get a green card because of Vartanyan's citizenship. Martinez never informed Avagyan that because she was in removal proceedings, the IJ had exclusive jurisdiction over any applications for adjustment of status. Nor did Martinez inform Avagyan that, even if she had a prima facie valid visa application pending, she would be subject to deportation

even though they are not attorneys; or (b) act as gatekeepers for "appearance attorneys" with limited or no knowledge of their client's case. *See*, *e.g.*, *Mendeza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1077 n.4 (9th Cir. 2007).

and likely denied the opportunity to apply for adjustment of status if the IJ denied her asylum application.[3]

On November 5, 2003, after a hearing, the IJ issued an oral decision denying Avagyan's application for asylum and withholding of removal and ordering her removed to Armenia. After the IJ's decision, Avagyan retained Mr. Gevorg (whom she believed was an attorney specializing in immigration appeals) to file an appeal to the BIA and to file a petition for an immediate relative visa that she believed would, if granted, enable her to apply for adjustment of status. Avagyan filed a notice of appeal on November 24, 2003.

On November 25, 2003, one day after Avagyan appealed the IJ's decision, Vartanyan filed an immediate relative visa petition on Avagyan's behalf. Gevorg told Avagyan that she needed to wait until the petition was approved to apply for adjustment of status. Avagyan did what Gevorg advised: she waited.

The BIA denied Avagyan's appeal on February 11, 2005.

---

[3]An alien who is the parent of a United States citizen is eligible for an immediate relative visa. 8 U.S.C. §§ 1151(a); 1151(b)(2)(A)(i). In the ordinary case, once the alien's visa has been approved, she may apply for an adjustment of status to lawful permanent resident if she is physically present in the United States and meets other requirements, not relevant here. *See* 8 U.S.C. § 1255(a), (c). If, however, the alien is in removal proceedings, she must file her application for adjustment of status in immigration court. Though the IJ has exclusive jurisdiction over the application for adjustment of status, the United States Bureau of Citizenship and Immigration Services (USCIS—formerly part of INS) has exclusive jurisdiction to adjudicate the visa petition. *See* 8 C.F.R. §§ 245.2(a), 1245.2(a)(1)(i). Accordingly, if an alien in removal proceedings may be eligible for adjustment of status but does not yet have an approved visa petition, she may request a continuance of removal proceedings while USCIS adjudicates the visa petition. *Dawoud v. BIA*, 561 F.3d 31, 33 n.1 (1st Cir. 2009). Typically, the IJ will continue removal proceedings until USCIS adjudicates the visa petition. Oral Argument at 7:30-8:45 (counsel for petitioner); 20:30-20:45 (counsel for Government).

Significantly, the BIA did not specifically inform Avagyan that a final order of removal had been entered. The order said, in its entirety: "The Board affirms, without opinion, the results of the decision below. The decision below, therefore, is the final agency determination."

Prior to December 2005, Avagyan consulted with present counsel, who, on December 1, 2005, entered a notice of appearance and requested Avagyan's immigration file to review. Counsel was given access to the file at the immigration court on January 4, 2006. On January 17, 2006, he reviewed the file with Avagyan and informed her that Spence, Martinez, and Gevorg had rendered ineffective assistance. He also informed Avagyan that Gevorg was not an attorney. On March 16, 2006, Avagyan, through counsel, informed Spence of the allegations against him. Spence did not reply. On March 27, 2006, Avagyan filed a complaint against Spence with the state bar.

On April 5, 2006 (eighty-five days after reviewing her file with present counsel), Avagyan filed a motion to reopen with the BIA, claiming that Spence, Martinez, and Gevorg rendered ineffective assistance of counsel. Specifically, Avagyan alleged that Spence and Martinez rendered ineffective assistance in preparing her asylum and withholding of removal claims. Further, she alleged that Spence, Martinez, and Gevorg failed to advise her that she needed to file a visa petition and application for adjustment of status before her removal proceedings concluded.

On July 17, 2006, the BIA denied the motion as untimely. The Board held that Avagyan had complied with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988),[4]

---

[4]*Lozada* requires a petitioner seeking to reopen based on a claim of ineffective assistance of counsel to:

    1) submit an affidavit explaining his agreement with former counsel regarding his legal representation, 2) present evidence

but found that Avagyan "ha[d] not acted with due diligence" and "failed to explain her 14 ½ month delay in filing her present motion following the Board's dismissal of her appeal." The Board noted that the motion to reopen was filed two and a half years after the end of Spence's representation, and concluded that Avagyan "knew what documents were submitted by [Spence] into evidence before the Immigration Judge." It stated that Avagyan "fails [to] explain the delay in seeking new counsel if she was dissatisfied with the representation that she had previously obtained." The BIA did not, however, specifically address Avagyan's diligence with respect to her claim that prior counsel ineffectively advised her on adjustment of status. Avagyan timely petitioned for review.

## II.

**[1]** "Although there is no Sixth Amendment right to counsel in a deportation proceeding, the due process guarantees of the Fifth Amendment 'still must be afforded to an alien petitioner.' " *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005) (quoting *Singh v. Ashcroft*, 367 F.3d 1182, 1186 (9th Cir. 2004)). This court has long recognized that "[i]neffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ray v. Gonzales*, 439 F.3d 583, 587 (9th Cir. 2006) (quoting *Lopez v. INS*, 775 F.3d 1015, 1017 (9th Cir. 1985)); *see also Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 858 (9th Cir. 2004); *Iturribarria v.*

---

that prior counsel has been informed of the allegations against her and given an opportunity to respond, 3) either show that a complaint against prior counsel was filed with the proper disciplinary authorities or explain why no such complaint was filed.

*Iturribarria v. INS*, 321 F.3d 889, 900 (9th Cir. 2003). Although, as a general rule, petitioners must comply with *Lozada*, failure to do so "is not necessarily fatal to a motion to reopen." *Castillo-Perez v. INS*, 212 F.3d 518, 525 (9th Cir. 2000).

*INS*, 321 F.3d 889, 899 (9th Cir. 2003); *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999). If the ineffective assistance of an alien's counsel prevents him from timely filing a motion to reopen, counsel has prevented the alien from reasonably presenting his case and denied him due process. Consequently, we "recognize[ ] equitable tolling of deadlines and numerical limits on motions to reopen . . . during periods when a petitioner is prevented from filing because of a deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud or error." *Iturribarria*, 321 F.3d at 897.

The Government argues that recent Supreme Court decisions "have called sharply into question" the ability of aliens in removal proceedings to invoke equitable tolling based on ineffective assistance of counsel. Relying on *Wallace v. Kato*, 549 U.S. 384 (2007), and *Lawrence v. Florida*, 549 U.S. 327 (2007), the Government argues that because an alien in removal proceedings has no constitutional right to counsel, she cannot "assert a due process-based claim of ineffective assistance founded on her counsel's alleged failures in removal proceedings."

A three-judge panel cannot reconsider or overrule circuit precedent unless "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *Norita v. N. Mariana Islands*, 331 F.3d 690, 696 (9th Cir. 2003) (emphasis removed, quoting *United States v. Gay III*, 967 F.2d 322, 327 (9th Cir. 1992)); *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a higher court decision is controlling when it "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"). We conclude that neither *Wallace* nor *Lawrence* undermine our existing precedent in this area, particularly in light of the Supreme Court's recent decision in *Holland v. Florida*, 130 S. Ct. 2549 (2010).

*Wallace* and *Lawrence* are "on point" only to the extent that they reiterate that equitable tolling is a remedy to be applied in exceptional circumstances. *Wallace* responded to the argument that the statute of limitations for a federal false arrest claim should be equitably tolled so long as petitioner was defending his criminal case in state court by noting that "[e]quitable tolling is a rare remedy to be applied in an unusual circumstances, not a cure-all for an entirely common state of affairs." 549 U.S. at 396. *Lawrence* held that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." 549 U.S. at 336-37 (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).[5] Neither case even considered whether individuals who have no constitutional right to counsel are *categorically precluded* from invoking equitable tolling on the basis of ineffective assistance of counsel, and thus are not "clearly irreconcilable" with our equitable tolling jurisprudence. *Miller*, 355 F.3d at 900.

The Supreme Court's decision in *Holland* further supports our conclusion that equitable tolling is based on considerations of fundamental fairness that apply regardless of whether petitioner has a constitutional right to counsel. *Holland* concluded that federal courts could equitably toll the

---

[5]The pages cited in *Coleman* establish that a prisoner has no right to counsel "to appeal a state collateral determination of his claims of trial error." 501 U.S. at 756-57. *Holland* reiterated that *Coleman* was a "case about federalism." 130 S. Ct. at 2533 (quoting *Coleman*, 501 U.S. at 726). Thus, *Coleman* considered "whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules." 130 S. Ct. at 2563. *Holland* explained that "[e]quitable tolling, by contrast, asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law." *Id. Coleman* is similarly irrelevant to equitable tolling in immigration cases, which concerns whether a federal executive agency and federal courts may excuse petitioner's failure to comply with federal timeliness rules.

statute of limitations for filing a habeas petition under 28 U.S.C. § 2254 because petitioner's attorney failed to satisfy professional standards of care. 130 S. Ct. at 2563-64. The Court held that "at least sometimes, professional misconduct . . . [could] amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Id.* Conspicuously absent from the majority opinion in *Holland* is any suggestion that equitable tolling is only warranted when petitioner has a constitutional right to counsel — even though, like individuals in immigration proceedings, state prisoners do not have a constitutional right to counsel when mounting collateral attacks upon the judgment of a state court. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1986). Two justices dissented in *Holland*, and did so on the ground that when an individual has no constitutional right to counsel, he is "out of luck" if his counsel files an appeal too late. 130 S. Ct. at 2571 (Scalia, J., dissenting, joined by Thomas, J.). The *Holland* majority also specifically distinguished *Lawrence* as a case involving "a garden variety claim of excusable neglect" that did not create extraordinary circumstances justifying equitable tolling. 130 S. Ct. at 2564 (citation omitted).

**[2]** We conclude that neither *Wallace* nor *Lawrence* undermines our application of equitable tolling to late-filed motions to reopen removal proceedings. *Holland* establishes even if a litigant is not constitutionally entitled to counsel, principles of equity can justify tolling a limitations period where counsel's behavior is sufficiently egregious.

### III.

We next consider whether the BIA abused its discretion in holding that Avagyan is not entitled to equitable tolling because she failed to exercise due diligence in discovering the fraud or error that prevented her from timely filing a motion to reopen. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc). The BIA abuses its discretion when its decision is "arbitrary, irrational, or contrary to law."

*Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1124 (9th Cir. 2000) (citation omitted).

The BIA and this court are under an affirmative obligation to "accept as true the facts stated in [petitioner's] affidavit in ruling upon his motion to reopen unless [we find] those facts to be inherently unbelievable." *Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007) (quoting *Maroufi v. INS*, 772 F.2d 597, 600 (9th Cir. 1985)). Because the BIA made no finding that the facts alleged in Avagyan's affidavit are inherently unbelievable, we accept them as true and undisputed. *Id.*

### A.

A motion to reopen must generally be filed "within ninety days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). A motion filed beyond that deadline is untimely, unless subject to equitable tolling. To reiterate, a petitioner is entitled to equitable tolling of the deadline "during periods when a petitioner is prevented from filing because of a deception, fraud, or error, as long as petitioner acts with due diligence in discovering the deception, fraud or error." *Iturribarria*, 321 F.3d at 897. We do not require petitioner to act with the "maximum diligence possible" — only "due" or "reasonable" diligence. *Cf. Souliotes v. Evans*, 622 F.3d 1173, 1175, 1178 (9th Cir. 2010) (describing the due diligence standard for habeas petitions in 28 U.S.C. § 2244(d)(1)(D)); *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d. Cir. 2000) (describing the due diligence standard in 28 U.S.C. § 2255(4)).

Our review of petitioner's diligence must be fact-intensive and case-specific, assessing the reasonableness of petitioner's actions in the context of his or her particular circumstances. *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1225 (9th Cir. 2002). We recognize that alien petitioners are often in "an extremely vulnerable position as the subjects of pending deportation proceedings." *Id*. Furthermore, "[t]he proliferation of immigra-

tion laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). We cannot penalize individuals in such circumstances for reasonably relying on the advice of counsel, even if that counsel turns out to have been incompetent or predatory. *Iturribarria*, 321 F.3d at 899; *Rodriguez-Lariz*, 282 F.3d at 1225.

**[3]** In order to assess whether petitioner exercised due diligence, we consider three issues. First, we determine if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying her motion to reopen. *See Ghahremani*, 498 F.3d at 999; *Singh v. Gonzales*, 491 F.3d 1090, 1096 (9th Cir. 2007); *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1100 (9th Cir. 2005). Second, we ascertain whether petitioner took reasonable steps to investigate the suspected fraud or error, or, if petitioner is ignorant of counsel's shortcomings, whether petitioner made reasonable efforts to pursue relief. *See Ghahremani*, 498 F.3d 996-97; *Ray*, 439 F.3d at 589 n.5. Typically, an alien is diligent if he continues to pursue relief and relies on the advice of counsel as to the means of obtaining that relief. *See, e.g, Mejia-Hernandez v. Holder*, 633 F.3d 818, 824-25 (9th Cir. 2011); *Ray*, 439 F.3d at 589 n.5; *id.* at 590. Third, we assess when the tolling period should end; that is, when petitioner definitively learns of the harm resulting from counsel's deficiency, or obtains "vital information bearing on the existence of his claim." *Albillo-De Leon*, 410 F.3d at 1100; *Fajardo*, 300 F.3d at 1022; *see also Socop-Gonzalez*, 272 F.3d at 1194. In many cases, this occurs when the alien obtains a complete record of his immigration proceedings and is able to review that information with competent counsel.[6] *See Ghahremani*, 498 F.3d

---

[6]It is an open question whether the tolling period extends until the alien complies with the requirements of *Lozada*, 19 I. & N. Dec. 637, or whether the time during which an alien is diligently working to comply with *Lozada* should be counted against the ninety days normally given to file a motion to reopen. *See Valeriano v. Gonzales*, 474 F.3d 669, 672 n.3

at 997, 999; *Singh*, 491 F.3d at 1096; *Albillo-De Leon*, 410 F.3d at 1100; *Iturribaria*, 321 F.3d at 899; *Fajardo*, 300 F.3d at 1022.

## B.

Avagyan's motion to reopen alleges two distinct forms of ineffective assistance, each of which provides an independent ground to reopen her removal proceedings. First, she alleges that Spence and Martinez were deficient in preparing her asylum claim for the removal hearing. If the BIA granted Avagyan's motion to reopen on this ground, Avagyan would be permitted to introduce evidence that was unavailable at the removal hearing because of Spence's and Martinez's deficient representation. Second, Avagyan alleges that Spence, Martinez, and Gevorg gave her erroneous advice on adjustment of status. If the BIA granted Avagyan's motion to reopen on this ground, it would permit her to submit an application for adjustment of status to the IJ, and request that the IJ continue her removal hearing until USCIS adjudicated her visa application.[7] We independently assess Avagyan's diligence with respect to each claim.

### 1.   *Counsel's Ineffective Preparation of Asylum Claim*

[4] We hold that, under the circumstances, Avagyan first had reason to suspect Spence's and Martinez's deficient performance with respect to her asylum petition when the BIA

---

(9th Cir. 2007); *see also Ray*, 439 F.3d at 589 n.5 (implying that filing a complaint with the state bar was part of petitioner's due diligence). Because we conclude that Avagyan filed her motion to reopen within ninety days of first suspecting prior counsels' deficiencies with respect to her adjustment of status claim, we need not resolve the issue at this time.

[7]The IJ's decision to continue removal proceedings is discretionary. 8 C.F.R. § 1003.29. We review an IJ's denial of a continuance for abuse of that discretion. *See*, *e.g.*, *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009).

denied her appeal in February 2005. *See Rodriguez-Lariz*, 282 F.3d at 1225 (holding that petitioners were on notice of counsel's deficient representation when they received denial of a motion for reconsideration, prepared by counsel). Avagyan's appeal to the BIA focused exclusively on the merits of her asylum petition, and its denial would have put a reasonable person in Avagyan's position on notice that something was wrong with Spence's and Martinez's preparation for the removal hearing.[8] Accordingly, we measure Avagyan's diligence from that date.

**[5]** Apparently, after February 2005, Avagyan took no affirmative steps to investigate whether Spence and Martinez adequately prepared her asylum claim. *See Singh*, 491 F.3d at 1097. Further, despite the fact that she had already retained Gevorg, who she thought was an attorney, Avagyan does not claim that she discussed the BIA's denial of her appeal with him and perhaps had been informed that Spence and Martinez had performed adequately, or that there was nothing to be done to remedy their deficiencies, or that Gevorg would correct the error. *Cf. Mejia-Hernandez*, 633 F.3d at 824-25 (holding that petitioner was diligent when, after his motion was denied for lack of a filing fee, he discussed the issue with counsel, who promised to remedy the BIA's mistake); *Rodriguez-Lariz*, 282 F.3d at 1225 (holding that petitioners did not lack diligence when, after receiving a denial of their appeal to the BIA, they relied on counsel's advice that filing a motion to reopen would be in their best interests). There-

---

[8]Contrary to the dissent's suggestion, Dissent at 8951, the denial of an appeal does not necessarily put an alien on notice of counsel's every deficiency. *See, e.g. Sun v. Mukasey*, 555 F.3d 802, 803, 805-06 (9th Cir. 2009) (recognizing that petitioner was not aware of prior counsels' errors until she received notice of an interview for adjustment of status based on her VAWA petition and retained new counsel, notwithstanding the fact that the BIA denied her asylum appeal two years prior); *Singh*, 491 F.3d at 1096 (stating that petitioner became suspicious of counsel's fraud a few weeks after the BIA denied his appeal, when friends suggested that he seek new counsel).

fore, we hold that the BIA did not abuse its discretion when it concluded that Avagyan did not act with due diligence with respect to her claim that Spence and Martinez provided ineffective assistance of counsel in preparing her asylum petition. Avagyan's motion to reopen was untimely with respect to that claim.

### 2. *Counsel's Incompetent Advice on Adjustment of Status*

It is unclear whether the BIA even considered whether Avagyan exercised due diligence with respect to her adjustment of status claim. Though the BIA recognized that Avagyan claimed Spence, Martinez, and Gevorg gave her incorrect advice on adjustment of status, its discussion of Avagyan's diligence focused almost exclusively on the lapse of time between when Avagyan should have known about the Spence's deficiencies in preparing her asylum claim for hearing and when she filed a motion to reopen.

[6] The BIA abuses its discretion when it denies petitioner's claim with no indication that it considered all of the evidence and claims presented by the petition. *See Mohammed*, 400 F.3d at 792. Even if we assume that some of the BIA's more general statements about Avagyan's diligence relate to her adjustment of status claim, the BIA's conclusions are unsupported by the record and contrary to law. The BIA's conclusion that Avagyan "failed to explain the delay" in seeking present counsel is wholly unsupported by the record. As the BIA recognized, Avagyan declared that, after the removal hearing, she retained Gevorg (whom she believed was an attorney), asked him about whether she could become a United States citizen as Vartanyan's relative, and worked with him to file a petition for an immediate relative visa. Gevorg told her that she had to wait until the petition he filed was approved before taking any further action.

[7] Avagyan had no reason to doubt Gevorg's advice about the proper procedure for seeking an immediate relative visa

and adjustment of status, and no reason to become suspicious that he failed to render competent advice in this respect. *See Sun v. Mukasey*, 555 F.3d 802, 805-06 (9th Cir. 2009) (holding that petitioner, who was told by counsel in 2003 that the courts could afford no relief and she should wait for her VAWA petition to be approved, was entitled to equitable tolling until she retained new counsel in 2006). Specifically, the BIA's denial of her appeal in no way put Avagyan on notice of the fact that she received bad advice about adjustment of status, or that, if she failed to timely reopen her removal proceedings, she would be precluded from applying for adjustment of status. *See id.* at 805. Indeed, a lay person reading the BIA's denial of Avagyan's appeal would not know that a final order of removal had issued, and would certainly not know that such an order rendered all efforts to seek adjustment of status ineffectual. *Cf. Socop-Gonzales*, 272 F.3d at 1182-83 (noting that a letter instructing petitioner to report for deportation on a specific date put him on notice that his attempts to adjust his status after being ordered removed had been unsuccessful).

**[8]** Avagyan asserts that, until she met with current counsel, she was unaware that prior counsel gave her bad advice on adjustment of status. The question is, therefore, whether Avagyan made reasonable efforts to pursue relief until she learned of counsel's ineffectiveness. *Ghahremani*, 498 F.3d at 996-97. We conclude that she did. Avagyan diligently filed a visa petition, and, on counsel's advice, waited approximately a year for it to be approved. Waiting was reasonable under the circumstances.[9] Given the long delays in our immigration sys-

---

[9]As other circuits have recognized, "there is no magic period of time— no per se rule—for equitable tolling premised on ineffective assistance of counsel." *Wang v. BIA*, 508 F.3d 710, 715 (2d. Cir. 2007). The dissent argues that there must be "some outer limit on equitable tolling." Dissent at 8952. Our precedent establishes the contrary— the length of time does not control our equitable tolling jurisprudence. In *Mejia-Hernandez*, we held that a petitioner who waited for nearly *seven years* was entitled to

tem, a year-long wait for adjudication of a visa application does not evidence a lack of diligence. *See Mejia-Hernandez*, 633 F.3d at 824-25 (holding that petitioner's seven-year long wait for his wife's NACARA claim to be adjudicated was reasonable under the circumstances and did not show lack of due diligence).

**[9]** Once Avagyan learned from her current counsel that Spence, Martinez, and Gevorg were ineffective with respect to her adjustment of status, she acted diligently to obtain and review her file, and comply with the requirements of *Lozada*, 19 I. & N. Dec 637. She did not obtain the "vital information" bearing on the existence of her claim until she reviewed her file with competent counsel, so the limitations period should be tolled until January 17, 2006. Because Avagyan filed her motion to reopen within ninety days of that date, her motion to reopen to apply for adjustment of status was timely. To the extent that the BIA concluded to the contrary, its decision was unsupported by the record, contrary to the law, and an abuse of discretion.

## IV.

Avagyan's story is all too common. Many, many immigrants fall victim to incompetent or fraudulent counsel who extract large sums of money but perform inadequately, or not at all. In recognition, we have long afforded equitable tolling of deadlines and numerical limitations to aliens who are pre-

---

equitable tolling of the entire period, because waiting was reasonable under the circumstances. *See Mejia-Hernandez*, 633 F.3d at 825 (recognizing that petitioner's wait was "long, but ultimately reasonable"); *see also Sun*, 555 F.3d at 805-06 (equitably tolling the period of more than two years between the BIA's denial of petitioner's appeal and her motion to reopen, when petitioner was waiting, on the advice of counsel, for adjudication of her VAWA petition); *Albillo De-Leon*, 410 F.3d at 1100 (equitably tolling the six months during which petitioner was waiting for a response to his FOIA request).

vented from timely or adequately filing due to ineffective assistance of counsel. The Supreme Court's decisions in *Wallace* and *Lawrence* do not undermine our equitable tolling jurisprudence, particularly in light of the Court's decision in *Holland.*

We conclude that Avagyan first had reason to became suspicious of counsels' ineffectiveness in preparing her asylum claim after the BIA denied her appeal on February 25, 2005, and did not establish her diligence in discovering counsel's deficiency or continuing to pursue asylum after that date. Thus, we hold that the BIA did not abuse its discretion when it concluded that Avagyan's motion to reopen on this ground was untimely.

Nevertheless, we hold that Avagyan did not have reason to become suspicious of her prior counsels' ineffectiveness in pursuing adjustment of status until she met with her current counsel. Avagyan then, with due diligence, obtained and reviewed her file, and filed a motion to reopen within ninety days of reviewing the file with competent counsel. The BIA abused its discretion in denying as untimely Avagyan's motion to reopen on the grounds of ineffective assistance in applying for adjustment of status.

We grant the petition in part and remand to the BIA with instructions to adjudicate the merits of Avagyan's motion to reopen to apply for adjustment of status. *Fajardo*, 300 F.3d at 1022, n.7. We retain jurisdiction over future appeals in this matter.

**PETITION GRANTED IN PART and DENIED IN PART. REMANDED. COSTS ARE AWARDED TO THE PETITIONER.**

CALLAHAN, Circuit Judge, dissenting:

As the majority recognizes, our review of the BIA's decision is for abuse of discretion. Here, the BIA's determination that Avagyan failed to exercise due diligence was not an abuse of discretion. Accordingly, I respectfully dissent.

Equitable tolling is a rare remedy to be applied only in "extraordinary circumstances," and not to "a garden variety claim of excusable neglect." See *Holland v. Florida*, 130 S.Ct. 2549, 2564 (2010). Even assuming that Avagyan reasonably relied on the alleged ineffective assistance, this does not excuse her failure, under the circumstances presented, to take any action for *ten months* after the BIA denied her appeal before consulting with current counsel.

The majority notes, and I agree, that by the time the BIA denied Avagyan's appeal, Avagyan was on notice that she had received ineffective "representation" from Spence, Martinez and Gevorg about her asylum claim. The BIA could reasonably draw the same conclusion concerning her immediate relative visa petition. Even accepting that Avagyan initially could rely on Gevorg's advice that she needed to wait until her visa petition was approved before applying for adjustment of status, the BIA's order finalizing her removal reasonably put her on notice to question that advice — particularly because the same "lawyer," Gevorge, was helping Avagyan with both her asylum claim and her immediate relative visa petition. *Cf. Sun v. Mukasey*, 555 F.3d 802 (9th Cir. 2009) (petitioner retained two different lawyers, "one to handle her successful [petition under the Violence Against Women Act] and one to handle her unsuccessful efforts to seek relief from removal through asylum"). However, Avagyan did nothing for ten months. Although the BIA may not have been *compelled* to conclude that Avagyan's failure to act reflected a lack of due diligence, the BIA *could* reasonably so conclude.[1]

---

[1]Contrary to the majority's suggestion, there is no evidence that the BIA failed to consider Avagyan's arguments with respect to her adjustment of

Avagyan's case is sympathetic, given her advanced age and her United States citizen daughter. This, however, does not entitle her to relief under the law. Although she was the victim of ineffective assistance from attorneys and others regarding her removal proceedings, there came a time when she had notice of the fraud against her, and was required to act with due diligence. Avagyan did not act promptly; in fact, she failed to act for ten months. The majority's insistence that the BIA was compelled to grant Avagyan relief, does a disservice by suggesting that an immigrant who has received a final order of removal may *simply wait for ten months, without doing anything at all* and still obtain relief.

There must be some outer limit on equitable tolling for filing motions to reopen; otherwise, such motions could be filed indefinitely. Under the circumstances presented here, in light of Avagyan's unexplained inaction for ten months, the BIA's conclusion that Avagyan failed to exercise due diligence is not an abuse of discretion.[2] Accordingly, I respectfully dissent.

---

status claim. The BIA considered Avagyan's arguments about asylum and adjustment of status — which were presented together, rather than separately, in her motion to reopen — and then determined that Avagyan had failed to explain her delay in seeking new counsel. There is no indication that the BIA's determination was limited to Avagyan's arguments about her asylum petition, and failed to cover her arguments about adjustment of status. The BIA did not abuse its discretion in not providing further explanation for its decision.

[2]Notwithstanding the majority's comments to the contrary, I do not suggest that there is a per se rule for the amount of time allowed on equitable tolling. Each case is evaluated in context and in light of the particular circumstances presented. It may well be that in some rare instances, a petitioner who waits for over six years — while continuously following up with his "attorney" during that time — is entitled to equitable tolling because he acted with due diligence and waiting was reasonable under the particular circumstances presented. *See Mejia-Hernandez v. Holder*, 633 F.3d 818, 825 (9th Cir. 2011). However, on the facts presented here, the BIA could conclude (although it did not have to) that waiting for ten months after the final denial of relief was not reasonable.

Furthermore, because I believe that Avagyan is not entitled to relief, and that the government's position is substantially justified, I would not award attorneys' fees to Avagyan but would have each side bear its own costs. *See* Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.